**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mykhal Lloyd Polite,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TitleMax of Arizona Incorporated,<br><br>　　　　Defendant. | No. CV-25-01574-PHX-JZB<br><br>**ORDER** |

Pending before the Court is Plaintiff's "Motion for Leave to File First Amended Complaint" ("Motion for Leave to Amend," and "Motion") (doc. 26).[1] Plaintiff seeks leave to amend to clarify his allegations, add facts and correct errors, and to add two additional claims. *See* (doc. 26 at 1–2.) The Court will deny the Motion without prejudice Because Plaintiff's proposed First Amended Complaint ("FAC") is unduly prejudicial for failing to comply with the Federal Rules of Civil Procedure and is futile for failing to present viable claims upon which relief may be granted.

**I.    Factual Background**.

On April 1, 2025, Plaintiff, proceeding *pro se*, commenced this action by filing a complaint against Defendant TitleMax of Arizona, Inc. ("TitleMax"), alleging negligence, fraudulent misrepresentation, failure to surrender title, and damages for breach of contract. (Doc. 1-1, at 5.) Plaintiff's action arises out of a settlement agreement between the Parties involving a repossessed 2011 Chevrolet Camaro. (*Id.* at 4); (doc. 26-2 at 2.)

---

[1] The Parties consented to magistrate judge jurisdiction on July 15, 2025. *See* (doc. 20).

On April 10, 2023, Plaintiff entered into a title loan agreement with Defendant involving the 2011 Chevrolet Camaro. (Doc. 26-2 at 2.) Upon default, Defendant repossessed the vehicle on November 21, 2023. (*Id.*) On July 16, 2024, the Parties entered a settlement agreement, whereby Plaintiff would regain possession of the vehicle, Plaintiff reserved the right to pursue claims for property damage, and in the event Plaintiff missed any payment, Defendant would "repossess the vehicle with finality." (*Id.* at 2–3.)

On July 25, 2024, Plaintiff retrieved the vehicle. (*Id.* at 3.) Plaintiff alleges that he found "the vehicle exhibited extensive damage[.]"[2] (*Id.*) Plaintiff asserts that prior to the settlement agreement, Plaintiff requested to inspect the vehicle, but was only provided aged photos of the vehicle without any damage. (*Id.*) Plaintiff alleges that upon contacting Defendant about the damage to the vehicle, "Defendant denied the existence of the reservation clause in the Settlement Agreement." (*Id.* at 4.)

Beyond the alleged damage to the vehicle, Plaintiff alleges that Defendant delayed transferring title to the vehicle. (*Id.*) Specifically, Plaintiff alleges that he completed final payment for the vehicle in January, 2025, however title was not issued until April 28, 2025. (*Id.*) Plaintiff asserts that the delay in transferring title has resulted in incurred fees and related damages. (*Id.* at 4–5.)

**II.     Procedural background**.

On April 1, 2025, Plaintiff commenced this action in the Maricopa County Superior Court. (Doc.1-1 at 3.) This action was subsequently removed to the U.S. District Court for the District of Arizona by Defendant on May 7, 2025. (Doc. 1 at 6.) On May 21, 2025, Plaintiff filed a motion for leave to amend. *See* (doc. 11.) This motion was denied for failure to comply with LRCiv. 15.1 and because of the use of hallucinated case from purported

---

[2]     The alleged damage to the vehicle includes:

> [a] dead battery, malfunctioning sunroof, sticky/unknown substance on gearshift knob, deteriorated steering wheel, check engine light (due to but not limited to catalytic converters), tire puncture, gashes to body, faded paint, missing passenger fog light cover, missing passenger side mirror cover, nonfunctioning daylight running lights, ignition switch malfunction[,] and other electrical malfunctions.

(Doc. 26-2 at 3.)

Artificial Intelligence use. *See* (doc. 25.) Following the Court's denial of his prior motion to amend, Plaintiff simultaneously filed the instant Motion for Leave to Amend and four-count proposed First Amended Complaint ("FAC") on October 6, 2025. (Docs. 26–27.)

**III.   Legal Standards**.

Rule 15 of the Federal Rules of Civil Procedure governs whether the Court should or should not grant leave to amend. *See generally* Fed. R. Civ. P. 15. Under Rule 15, a party may amend its pleadings as a matter of course within 21 days of serving it, or 21 days after service of a responsive pleading or Rule 12(b), (e), or (f) motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Generally, leave to amend is "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality" in normal circumstances. *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987) (cleaned up); *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1152 (9th Cir. 2011) ("Rule 15(a) is designed to facilitate decision on the merits, rather than on the pleadings or technicalities.") (cleaned up). While Rule 15 is to be applied with extreme liberality, it does not guarantee leave to amend will be granted. Rather, the decision whether to "grant or den[y] . . . an opportunity to amend is within the discretion of the District Court[.]" *Komie v. Buehler Corp.*, 449 F.2d 644, 648 (9th Cir. 1971) (citation omitted).

In analyzing whether leave to amend should be granted, the Court applies the following *Foman* factors:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

In applying the *Foman* factors, the U.S. Court of Appeals for the Ninth Circuit has clarified that not every factor is weighed evenly. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Specifically, "[p]rejudice is the 'touchstone of the inquiry under rule 15(a).'" *Id.* (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)).

Beyond undue prejudice, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). An amendment is futile where it does not "present a viable claim on the merits for which relief could be granted[,]" *Murray v. Schriro*, 745 F.3d 984, 1015 (9th Cir. 2014), or "[w]here the legal basis for a cause of action is tenuous[.]" *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

**IV.   Discussion**.

Plaintiff seeks leave to amend so that he may: (1) clarify his allegations; (2) correct errors and omissions in his original Complaint; and (3) add two additional claims. *See* (doc. 26 at 1–2.) Plaintiff supports his Motion by referencing Rule 15's liberal standard and stating that none of the *Foman* factors are present. (*Id.* at 1.) In its Response, Defendant asserts that Plaintiff's Motion for Leave to Amended should be denied for two reasons. First, Defendant argues that Plaintiff's FAC does not comply with Fed. R. Civ. P. 8 and 10 because it fails to provide a short and plain statement of the claims. *See* (doc. 33 at 2–3.) Second, Defendant argues that Plaintiff's proposed FAC is futile. (*Id.* at 5.) The Court will accordingly address whether: (1) Plaintiff's FAC complies with the Federal Rules of Civil Procedure; and (2) the proposed FAC is futile.

*1.  Short and Plain Statement of the Claims*.

The first matter the Court shall address is whether Plaintiff's FAC complies with the Federal Rules of Civil Procedure. Under Rule 8, a pleading must contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ.

P. 10(b).

While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Where a complaint contains the factual elements of a cause, but those elements are scattered throughout the complaint without any meaningful organization, the complaint does not set forth a 'short and plain statement of the claim' for purposes of Rule 8." *Saliba v. Fed. Aviation Admin.*, 348 F.R.D. 351, 353 (D. Ariz. 2025) (citation omitted). Leave to amend may be denied where a proposed amended complaint does not comply with Rule 8. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011) (affirming district court's denial of leave to amend where the proposed amended complaint failed to comply with Rule 9).

Plaintiff's FAC does not comply with either Rule 8 or 10. First, Plaintiff's FAC contains factual elements of each claim scattered throughout the FAC without any meaningful organization. For example, with his Arizona Consumer Fraud Act count, Plaintiff does not specifically refer to any conduct Defendant had engaged in which allegedly breached the Parties' settlement agreement. *See* (doc. 27 at 14.) Rather, in this count, Plaintiff broadly states that "Defendant's deceptive conduct regarding the vehicle's condition prior to, during[,] and after the settlement agreement[] constitutes unlawful practices under Arizona law." (*Id.*) Such lack of meaningful organization necessitates Defendant—and the Court—to parse through the FAC and guess which facts apply to each claim. While minimally ambiguous claims are excusable, indeterminate claims are not.

Second, Plaintiff's FAC provides only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Ashcroft*, 556 U.S. at 678. Each count in the FAC utterly fails to meaningfully apply any facts to any cause of action. Instead, in each count, Plaintiff only provides conclusory statements and citations to a slew of state statutes that are paraphrased elsewhere in the FAC. *See* (doc. 27 at 12–14.) For

- 5 -

example, Plaintiff's negligent bailment claim solely states that Defendant had a duty to safeguard Plaintiff's vehicle and failed to do so. (*Id.* at 14.) Plaintiff does not reference any facts establishing a bailor-bailee relationship. Further, the only support Plaintiff provides is a list of six state statutes—which provide attenuated support at best.

Finally, Plaintiff's FAC fails to comply with Rule 10. Specifically, the assertions contained within each count are in un-numbered paragraphs, making it difficult for Defendant to comply with its own obligations under the Federal Rules. See, e.g., Fed. R. Civ. P. 8(b)(1) ("In responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party.").

In conclusion, Plaintiff's FAC fails to comply with the Federal Rules of Civil Procedure. Allowing such a non-complaint Complaint to proceed would unduly prejudice Defendant, as Defendant would have to intuit which facts apply to each claim, analyze 16 state statutes that have little to no import on each claim, and then respond hoping that their intuition as to each claim is correct. Although Plaintiff—due to his *pro se* status—is proffered greater leeway than a represented party would be, his status does not excuse his failure to comply with the Federal Rules nor permit undue prejudice towards Defendant.

   *2. Futility.*

While Plaintiff's failure to comply with the federal rules—and the undue prejudice resulting from that failure—is sufficient to deny leave to amend, the Court will also address whether Plaintiff's FAC is futile. Plaintiff's FAC asserts the following counts: (a) breach of contract; (b) "Misrepresentation/Fraud"; (c) "Negligence/Bailment"; and (d) violations of the Arizona Consumer Fraud Act ("ACFA").[3] (Doc. 27 at 12–14.) The Court will address each count in turn.

   a. Count One: Breach of Contract.

In his first count, Plaintiff alleges that Defendant's failure to transfer title and "deliver the vehicle in substantially the same condition as represented" breached the

---

[3] The instant action is before the Court on diversity jurisdiction, *see* (doc. 1 at 3–4), with all Plaintiff's claims arising out of Arizona law. *See generally* (doc. 27.)

Parties' settlement agreement. (*Id.* at 12.) To succeed on a breach of contract claim under Arizona law, a party "must show that an enforceable contract exists, that it was breached, and that the plaintiff suffered damages." *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971. 984–85 (D. Ariz. 2017) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)).

Viewing the facts in the light most favorable to Plaintiff, he has failed to present a viable claim on the merits for which relief could be granted. This is because he has not shown that an enforceable settlement agreement exists. While Plaintiff references a settlement agreement between the Parties, he does not attach a copy of the agreement to the FAC. Instead, Plaintiff only refers to three purported provisions of the settlement agreement which: (1) transfers possession of the vehicle to Plaintiff; (2) reserves Plaintiff a right to sue for damages to the vehicle; and (3) provided that any missed payments would "permit Defendant to repossess the vehicle with finality." (Doc. 27 at 2.) Such allegations are insufficient to establish that an enforceable contract existed.

Furthermore, Plaintiff fails to allege that a breach of the settlement agreement has occurred. Under the purported settlement agreement, Defendant performed its sole obligation by permitting Plaintiff to retrieve the vehicle. *See* (*id.* at 2.) While Plaintiff alleges that the vehicle was greatly damaged upon retrieval, he does not allege that Defendant violated their only obligation—*i.e.*, transfers possession of the vehicle to Plaintiff.[4] Accordingly, the first count of Plaintiff's FAC is futile.

  b. Count Two: Misrepresentation and Fraud.

Plaintiff's second count alleges that Defendant's acts in denying him the right to inspect the vehicle and only showing him "outdated photos" amounted to fraudulent inducement. (*Id.* at 13.) To state a claim for fraud under Arizona state law, a party must sufficiently plead:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's

---

[4] Plaintiff's reply likewise argues that violations of the settlement agreement have occurred. *See* (doc. 34 at 4.) however, Plaintiff's reply does not state what provisions of the settlement agreement Defendant violated. *See* (*id.* at 4–5.)

- 7 -

knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury.

*SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 691 (D. Ariz. 2022) (citing *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003)).

Viewing the facts in the light most favorable to Plaintiff, he has failed to present a viable fraud claim upon which relief could be granted. This is because he has failed to plead all nine elements to successfully state a claim for fraud under Arizona law. While Plaintiff's pleadings establish that there was a false representation—*i.e.*, providing Plaintiff with an outdated picture of the vehicle—that likely induced him to enter the settlement agreement, he fails to plead any of the remaining elements for fraud.[5] Because Plaintiff has failed to state a viable fraud claim under Arizona law, his second count is futile.

    c.  Count Three: Negligent Bailment.

Plaintiff's third count asserts that "Defendant owed a duty to safeguard the vehicle" during and after the Parties' negotiations but failed to do so. (Doc. 27 at 14.) Under Arizona law, "[a] bailment arises 'where personal property is delivered to one party by another in trust for a specific purpose, with the *express or implied agreement that the property will be returned* or accounted for when the purpose is accomplished.'" *Kim v. Wong*, 512 P.3d 689, 691 (Ariz. Ct. App. 2022) (quoting *Nava v. Truly Nolen Exterminating of Houston, Inc.*, 683 P.2d 296, 299 (Ariz. Ct. App. 1984)) (emphasis added).

A negligence claim under Arizona law requires: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). To establish a claim for

---

[5] While not eminently clear from the pleadings, it does appear that Defendant's counsel shared the photographs with Plaintiff during settlement agreements. If so, Plaintiff, "as a matter of law and common sense, . . . had no right to rely on [representations] made by the attorneys opposing" him. *Linder v. Brown & Herrick*, 943 P.2d 758, 765 (Ariz. Ct. App. 1997).

- 8 -

negligence of a bailment, a party must "affirmatively show some causal negligence on the part of the bailee[.]" *Blair v. Saguaro Lake Dev. Co.*, 495 P.2d 512, 515 (Ariz. Ct. App. 1972) (citing *Hansen v. Oregon-Washington R. & Nav. Co.*, 188 P. 963, 970 (Or. 1920)).

Viewing the facts in the light most favorable to Plaintiff, he has failed to present a viable claim for negligence in the bailment of the vehicle. This is because, under Arizona law, Defendant's repossession of Plaintiff's vehicle did not amount either an express or implied agreement that the vehicle would be returned to Plaintiff. Specifically, Plaintiff had entered a "title loan agreement" with Defendant, using the vehicle as collateral. (Doc. 27 at 2.) When Plaintiff defaulted on the loan, Defendant—as the secured party—had the right to take possession of the collateral and dispose of the collateral by sale or lease, so long as that disposition was reasonable. A.R.S. §§ 47-9609(A)(1), 47-9610(A).

Even after the Parties entered into a settlement agreement, the vehicle was not a bailment. This is because Plaintiff did not own the vehicle outright until the final payment on the vehicle. *See* (doc. 27 at 2.) Were he to miss a payment, Defendant could once again repossess the vehicle and dispose of it in a commercially reasonable fashion under A.R.S. § 47-9610(A). Because Defendant still had a right in the vehicle until after final payment, a bailment did not exist after the purported settlement agreement.

Therefore, viewing the facts in the light most favorable to Plaintiff, Plaintiff does not have a viable negligence in the bailment claim because a bailment did not exist. Accordingly, Plaintiff's third count is futile.[6]

d. Count Four: Violation of ACFA.

In Plaintiff's final count, he asserts that "Defendant's deceptive conduct regarding the vehicle's condition prior to, during[,] and after the settlement agreement[] constitutes unlawful practices in Arizona." (Doc. 27 at 14.) Under Arizona law, the use of "any

---

[6] Plaintiff's Reply appears to argue that Defendant may have themselves entrusted the vehicle to another. (Doc. 34 at 4–5.) However, after repossession, and for the reasons noted above, Plaintiff did not have a property interest in the vehicle. Accordingly, Plaintiff would not have standing to assert such an argument, because a plaintiff cannot raise another person's rights—rather the right must be personal to that individual. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (citation omitted).

deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, . . . with intent that others rely on such [act], in connection with the sale or advertisement of any merchandise . . . [is] unlawful." A.R.S. § 44-1522(A).

Viewing the facts in the light most favorable to Plaintiff, the Court finds that he has failed to present a viable ACFA claim because, under the plain and unambiguous terms of the Act, it does not apply to settlement agreements. Under both federal and state precedent, where "the words of a statute are unambiguous, the 'judicial inquiry is complete.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)); *State v. Serrato*, 568 P.3d 756, 759 (Ariz. 2025) ("If a statute's text is clear and unambiguous, it controls unless it results in an absurdity or a constitutional violation."). Turning to the text of the ACFA, the Act only applies to advertisements and sales. *Id.* Starting with advertisements, the Act defines an advertisement as "the attempt by publication, . . . oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." A.R.S. § 44-1521(1). Next, the Act defines sales as "any sale, offer for sale or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." A.R.S. § 44-1521(7). So, on its face, the ACFA is clear that a settlement agreement—and the negotiations leading to that agreement—is neither an advertisement nor a sale.[7] Because Plaintiff fails to present a viable claim upon which relief may be granted, his ACFA count is futile.

**V.   Conclusion**.

For the foregoing reasons, the Court finds that Plaintiff's FAC is unduly prejudicial for its failure to comply with Fed. R. Civ. P. 4 and futile for failing to present viable claims upon which relief may be granted. Therefore, the Court will deny leave to amend without

---

[7]   Plaintiff's Reply asserts that *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83 (Ariz. Ct. App. 1983) and *State ex rel. Horne v. AutoZone, Inc.*, 275 P.3d 1278 (Ariz. 2012) extend the ACFA to "settlement exchanges involving consumer property. (Doc. 34 at 3.) Neither case supports such a contention. Notably, neither case involved a post-judgment nor post-settlement transfer of any property. *See generally Dunlap*, 666 P.2d 83; *State ex rel. Horne*, 275 P.3d 1278. It appears that Plaintiff relies on these cases because each case states the word "settlement" once. *See Dunlap*, 666 P.2d at 84; *State ex rel. Horne*, 275 P.3d at 362.

1 prejudice and will not file Plaintiff's lodged FAC (doc. 27).

2 Accordingly,

3 **IT IS ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint (doc. 26) is **DENIED WITHOUT PREJUDICE**.

5 **IT IS FURTHER ORDERED** that Plaintiff's Proposed First Amended Complaint (doc. 27) shall not be filed.

7 **IT IS FURTHER ORDERED** that Plaintiff shall have until **DECEMBER 26, 2025**, to file second motion for leave to amend. Such motion must comply with the Federal Rules of Civil Procedure.

Dated this 11th day of December, 2025.

Honorable John Z. Boyle
United States Magistrate Judge