**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mykhal Lloyd Polite, | No. CV-25-01574-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| TitleMax of Arizona Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment ("Motion"). (Doc. 48.) For the following reasons, the Court will grant the Motion.

## I.    SUMMARY OF CONCLUSIONS.

After Plaintiff defaulted on a loan agreement, Defendant repossessed his vehicle. (Doc. 47 at 1); (doc. 50 at 1.) A third-party repossession company retrieved and stored the vehicle. (Doc. 47-2 at 2); (doc. 52 at 2.) In July 2024, the Parties entered into a settlement agreement under which Plaintiff recovered the vehicle. (Doc. 47 at 2); (doc. 50 at 2.) Plaintiff alleges that the recovered vehicle was damaged. (Doc. 1-1 at 2–4.) Plaintiff sued Defendant alleging breach of contract, fraud, negligence, and violations of various Arizona statutes. (*Id.* at 5–7.)

Plaintiff's claims are legally and factually insufficient. As an initial matter, Plaintiff has not presented evidence from which a reasonable factfinder could conclude that the vehicle was damaged. Even if the vehicle was damaged, the evidence suggests that the third-party repossession company, not Defendant, would be legally responsible for those

damages. Moreover, no reasonable factfinder could conclude that Defendant breached the settlement agreement or violated any of the cited Arizona statutes. Therefore, the Court will grant Defendant's Motion.

## II.    BACKGROUND.

### A. Factual Background.

On April 10, 2023, the Parties entered into a loan agreement under which Defendant gave Plaintiff a loan and took a lien on Plaintiff's 2011 Chevrolet Camaro. (Doc. 47-1 at 1); (doc. 52 at 6.) After Plaintiff defaulted, Defendant repossessed the vehicle. (Doc. 47 at 1); (doc. 50 at 1.) Defendant gained title to the vehicle after the repossession. (Doc. 47 at 1); (doc. 50 at 1–2.)

A third party, Swift Recovery Group ("Swift"), physically repossessed the vehicle. (Doc. 47-2 at 2); (doc. 52 at 2.) Defendant claims the repossessed vehicle was stored at a location owned by IAA Holdings, LLC ("IAA"). (Doc. 47 at 1.) On November 29, 2023, Plaintiff retrieved his personal belongings from a location associated with Swift. (Doc. 52 at 2–3.)

In December 2023, Plaintiff filed a lawsuit against Defendant. (Doc. 47-1 at 1); (doc. 52 at 6.) On June 24, 2024, during settlement negotiations, Defendant's counsel sent Plaintiff pictures of the vehicle purporting to show that there was no damage during repossession. (Doc. 47 at 2); (doc. 50 at 2.) Plaintiff claims that additional photographs later produced by Defendant "show dirt, debris, or diminished appearance not reflected in the initial photographs." (Doc. 50 at 2.)

In July 2024, the Parties entered into a settlement agreement ("Agreement"). (Doc. 47 at 2); (doc. 50 at 2.) Under the Agreement, Defendant was required to coordinate the delivery of the vehicle to Plaintiff.[1] (Doc. 47 at 2); (doc. 50 at 2.) Plaintiff agreed to release Defendant from all claims relating to the original loan agreement except those relating to

---

[1] "Upon [Plaintiff's] first payment of $500.00 due on July 19, 2024, [Plaintiff] shall take immediate possession of the Vehicle at its current location, which shall be done no later than July 26, 2024. [Defendant] agrees to coordinate the release of the Vehicle to [Plaintiff]." (Doc. 47-1 at 2.)

property damage to the vehicle.[2] (Doc. 47 at 2); (doc. 50 at 2.) The Agreement contained an integration clause.[3] (Doc. 47-1 at 5.)

On July 25, 2024, Plaintiff recovered the vehicle. (Doc. 47 at 2); (doc. 50 at 2.) Defendant delivered a certificate of title to Plaintiff and assigned it to him. (Doc. 47 at 2); (doc. 50 at 3.) Plaintiff alleges the delivery was untimely[4] and that the title contained various inconsistencies.[5] (Doc. 50 at 3.)

Plaintiff claims that upon retrieving the vehicle he "noticed significant cosmetic and mechanical damage to the car" requiring more than $25,000 to repair. (Doc. 1-1 at 2–4.) In support of this claim, Plaintiff provided photographs of the vehicle, a document purporting to show that the vehicle failed engine and emissions testing, and a mechanic's initial work order dated October 11, 2024. (Doc. 52 at 22–34, 50–59). Plaintiff has not provided any evidence showing when the alleged damage occurred. *See generally* (doc. 52.)

**B. Procedural Background.**

On April 1, 2025, Plaintiff, proceeding *pro se*, filed a Complaint against Defendant in the Maricopa County Superior Court. (Doc. 1-1 at 3.) On May 7, 2025, the action was removed to the District of Arizona.[6] (Doc. 1 at 6.) On July 15, 2025, the Parties consented to Magistrate Judge jurisdiction. (Doc. 20.)

Plaintiff filed three motions for leave to amend the Complaint. (Doc. 11); (doc. 26);

---

[2] "The release . . . does not include, and [Plaintiff] expressly reserves notwithstanding any other provision of this Agreement, solely those claims and causes of action related to property damage to the Vehicle, including without limitation body, mechanical, electrical, or cosmetic damage, that arise from the repossession of the Vehicle on or about November 16, 2024. This reservation does not include economic or emotional damages." (Doc. 47-1 at 2–3.)

[3] "This Agreement constitutes the entire agreement between the Parties, and no other understandings, agreements, or representations, verbal or otherwise, exist or have been made in connection with the subject matter hereof or may be relied upon, other than as set forth herein, by the Parties. Furthermore, this Agreement cannot be changed, amended, or terminated except pursuant to a written agreement executed by the Parties." (Doc. 47-1 at 5.)

[4] The certificate of title is dated April 28, 2025. (Doc. 52 at 46). Plaintiff's last payment pursuant to the Agreement was apparently made on January 16, 2025. *See* (Doc. 52 at 11–14) (pictures of receipts purporting to show all payments made by Plaintiff).

[5] The "inconsistencies" alleged are: (1) an inaccurate odometer reading; (2) incorrect dates; and (3) "blank or unfilled fields." (Doc. 52 at 4.)

[6] The instant action is before the Court on diversity jurisdiction, *see* (Doc. 1 at 3–4), with all claims arising under Arizona law. *See generally* (Doc. 1-1.)

- 3 -

(doc. 37). The first was denied for failure to comply with LRCiv 15.1 and because Plaintiff used fictional cases likely generated by Artificial Intelligence. (Doc. 25 at 1–2.) The second and third were denied as futile. (Doc. 35 at 1); (doc. 40 at 1.) The latter motion was denied with prejudice: the Court held "that Plaintiff shall not be permitted further leave to amend his Complaint." (Doc. 40 at 11.) Given the apparent deficiencies in Plaintiff's original Complaint, the Court ordered Plaintiff to explain why his claims should not be summarily dismissed. (*Id.*) On February 26, 2026, Plaintiff filed his Response to Order & Opposition Against Dismissal ("Response"). (Doc. 46.)

On March 30, 2026, Defendant filed its Motion for Summary Judgment (Doc. 48), which was accompanied by a Statement of Facts. (Doc. 47.) On May 1, 2026, Plaintiff filed a Memorandum in Opposition to Summary Judgment (Doc. 51), a Response to Defendant's Statement of Facts (Doc. 50), and a separate Statement of Facts. (Doc. 52.)

**III.    LEGAL STANDARD.**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court is required to view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citation omitted). Summary judgment is also appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## IV.   DISCUSSION.

Defendant has moved for summary judgment on all of Plaintiff's claims. (Doc. 48 at 17.) The Complaint asserts that Defendant violated: (1) Arizona Revised Statutes ("A.R.S.") § 12-2509; (2) A.R.S. § 44-1522; (3) A.R.S. § 28-2131 and § 28-2134; (4) A.R.S. § 28-2060; and (5) A.R.S. § 47-2718.[7] (Doc. 1-1 at 5.) The Complaint also contains vague assertions that Defendant: (1) breached the Agreement; (2) misrepresented the vehicle's condition; and (3) engaged in "negligence, malpractice, and deception." (*Id.* at 5–7.)

Defendant argues that Plaintiff has abandoned all claims and arguments not addressed in Plaintiff's Memorandum. (Doc. 54 at 2–3.) The Ninth Circuit has held that a plaintiff has "abandoned . . . claims by not raising them in opposition to the [defendant's] motion for summary judgment." *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (applying this rule to a *pro se* plaintiff). Several district courts have held that "failure to respond to an argument in an opposition brief may constitute a concession of the argument[.]" *Sema Logistics Inc. v. Alternative Heavy Towing Inc.*, No. CV-23-02098-PHX-KML, 2025 WL 460525 (D. Ariz. Feb. 11, 2025) (citing *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1219 n. 7 (N.D. Cal. 2013)); *see Spiecker v. Lewis*, No. CV-23-08073-PCT-DLR, 2026 WL 496770 (D. Ariz. Feb. 23, 2026) ("[G]enerally the failure to respond to an argument is grounds for deeming that claim abandoned or conceded.").

Although Plaintiff's Memorandum does not directly address many of Defendant's legal arguments, *see generally* (doc. 51), Plaintiff did attempt to address the merits of the Complaint in his Response. *See* (doc. 46). The Court is also mindful that "[a] document filed *pro se* is 'to be liberally construed[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In any event, Plaintiff's claims do not survive scrutiny. Therefore, the Court will address each allegation in the Complaint

---

[7] Plaintiff has since conceded that A.R.S. § 47-2718 is inapplicable. (Doc. 46 at 4) ("The Plaintiff agrees that the inclusion of this specific statute was futile."). Thus, this claim is dismissed without further discussion.

and consider arguments in both the Response and the Memorandum.

### A.  A.R.S. § 12-2509.

The first statute at issue is part of Arizona's adoption of the Uniform Contribution Among Tortfeasors Act ("UCATA"). *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 172 P.3d 410, 412–13 (Ariz. 2007). The statute concerns the right to contribution among joint tortfeasors.[8] A.R.S. § 12-2509(A). On its face, the statute is inapplicable to this case because Plaintiff has not alleged that Defendant is a joint tortfeasor or made any other argument in support of the statute's applicability. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (noting where "the words of a statute are unambiguous, the 'judicial inquiry is complete'") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)); *State v. Serrato*, 568 P.3d 756, 759 (Ariz. 2025) ("If a statute's text is clear and unambiguous, it controls unless it results in an absurdity or a constitutional violation."). Therefore, the Court will grant summary judgment as to Plaintiff's UCATA claim without further discussion.

### B.  A.R.S. § 44-1522.

The second statute at issue is part of the Arizona Consumer Fraud Act ("ACFA"). *Henderson v. Moskowitz*, 579 P.3d 869, 870 (Ariz. 2025). This Court has twice stated that the ACFA does not apply to settlement agreements:

> Under Arizona law, the use of "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, . . . with intent that others rely on such [act], in connection with the sale or advertisement of any merchandise . . . [is] unlawful. A.R.S. § 44-1522(A).

> Viewing the facts in the light most favorable to Plaintiff, the Court finds that he has failed to present a viable ACFA claim because, under the plain and unambiguous terms of the Act, it does not apply to settlement agreements. . . . Turning to the text of the ACFA, the Act only applies to advertisements and sales. *Id.* Starting with advertisements, the Act defines an advertisement as "the attempt by publication, . . . oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." A.R.S. § 44-1521(1). Next, the Act defines sales

---

[8] For purposes of the statute, joint tortfeasors are persons "jointly or severally liable in tort for the same injury to person or property or for the same wrongful death." A.R.S. § 12-2501(A).

- 6 -

as "any sale, offer for sale or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." A.R.S. § 44-1521(7). So, on its face, the ACFA is clear that a settlement agreement—and the negotiations leading to that agreement—is neither an advertisement nor a sale.

(Doc. 35 at 9–10); (doc. 40 at 7.)

Since Plaintiff has made no new arguments in support of the ACFA's applicability, the Court finds no reason to deviate from its prior holding. Accordingly, the Court will grant summary judgment as to Plaintiff's ACFA claim.

### C. A.R.S. § 28-2131 and § 28-2134.

The next statutes at issue are Arizona's "titled vehicle statutes," which constitute the "generally applicable law" concerning the perfection of vehicle liens. *In re Lloyd*, 511 B.R. 657 (Bankr. D. Ariz. 2014). The statute's provisions apply to liens on vehicles such as Plaintiff's. *See* A.R.S. § 28-2131 ("[The provisions apply to] a certificate of title retention instrument or any other instrument affecting or evidencing title to, ownership of or reservation of title to a vehicle required to be issued a certificate of title and registered[.]"). Plaintiff's claim depends on § 28-2134, which states in relevant part:

> If a holder of a lien or encumbrance who possesses a certificate of title as provided in this article refuses or fails to surrender the certificate of title to the person who is legally entitled to possession of the certificate of title on that person's request and within fifteen business days after the holder receives payment in full satisfaction of the holder's lien or encumbrance, after an opportunity for an administrative hearing, the department may impose and collect a civil penalty from the holder of the lien or encumbrance to be deposited . . . in the state highway fund[.]

A.R.S. § 28-2134(C).

Plaintiff argues that § 28-2134 is relevant because it "presents the statutory duty of the Defendant to release the title within the reasonable time of 15 business days of satisfaction of the agreement" and thus establishes "Defendant's lack of reasonable care when dealing with the Plaintiff." (Doc. 46 at 7.) However, as an initial matter, Plaintiff has failed to provide any evidence that Defendant is a lienholder. Although Defendant held a lien against Plaintiff's vehicle before the Settlement Agreement, (doc. 47-1 at 1), all

- 7 -

available evidence suggests that Defendant subsequently gained title to the vehicle and entered a new relationship with Plaintiff that did not involve a lien or encumbrance. *See* (Doc. 52 at 4) ("Defendant became the titled owner of the vehicle after repossession."); (*Id.* at 56) (a certificate of title dated April 28, 2025, that lists Defendant as "Owner" and does not list any liens). Given the evidence in the record, no reasonable factfinder could conclude that this matter involves a lienholder.

Furthermore, Plaintiff has not presented sufficient evidence that the alleged "inconsistencies" in the title are at all relevant. Plaintiff asserts that the certificate of title has (1) an inaccurate odometer reading[9]; (2) incorrect dates[10]; and (3) unfilled fields.[11] (*Id.* at 4.) But Plaintiff has failed to establish that these alleged inconsistencies relate to A.R.S. § 28-2134 or entitled Plaintiff to relief under any other statute.[12]

Therefore A.R.S. § 28-2134 is inapplicable on its face, and the Court will grant summary judgment as to Plaintiff's claims under A.R.S. § 28-2131 and § 28-2134.

**D. A.R.S. § 28-2060.**

The next statute at issue reads in relevant part:

> A. Except as provided in [a subsection of the statute concerning liens], when the title or interest of an owner of a registered vehicle passes to another other than by voluntary transfer, the transferee shall obtain a transfer of registration within thirty

[9] Plaintiff appears to be correct that the odometer readings are inconsistent. A photograph dated November 11, 2023 shows an odometer reading of 115,395 miles, (doc. 52 at 59), but the listed mileage on the certificate of title dated April 28, 2025 is 93,991 miles. (*Id.* at 56.)

[10] Plaintiff correctly noted that the date of sale and the issue date are not the same. *See* (Doc. 52 at 4, 56.) Plaintiff has not explained how this is an "inconsistency." *See generally* (Doc. 52).

[11] The certificate of title does not appear to have any unfilled fields. (Doc. 52 at 56.)

[12] Plaintiff noted that federal and state statutes require the seller of a vehicle to accurately state the vehicle's mileage. *See* (doc. 46 at 8); 49 U.S.C. § 32705 (requiring milage disclosures in vehicle title transfers), 49 U.S.C. § 32710 (creating a private right of action for violations committed "with intent to defraud"); A.R.S. § 28-2058 (similar statute in Arizona). But Plaintiff has not presented any evidence showing that Defendant intentionally violated these statutes to defraud Plaintiff. *See Bodine v. Graco, Inc.*, 533 F.3d 1145, 1151–52 (9th Cir. 2008) (confirming that "the private right of action covers prohibited acts that are committed with fraudulent intent and excludes cases where some fraudulent act happens to coincide with a violation of a regulation but the violative act is done for reasons other than to perpetrate a fraud") (quoting *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 712 (7th Cir. 2005)). Indeed, Plaintiff was in a better position than Defendant to know the correct odometer reading because only Plaintiff has driven the vehicle.

days after the passing of the title or interest.

> B. Within thirty days after passing of the title or interest of an owner of a registered or unregistered vehicle, the transferee of the vehicle shall obtain a new certificate of title on proper application and presentation of the last certificate of title, if available, and such instruments or documents of authority or certified copies of the instruments or documents that are sufficient or required by law to evidence or effect a transfer of title or interest in or to chattels that pass to another other than by voluntary transfer.

A.R.S. § 28-2060(A)–(B).

Under the plain language of the statute, transferees—*i.e.*, people receiving title—are required to take various actions when title to a registered vehicle is transferred. *Id.* Here, the Parties agree that Plaintiff is the transferee. *See* (doc. 46 at 7); (doc. 48 at 6.) Moreover, the passing of title from Defendant to Plaintiff appears to be a "voluntary transfer" because the Parties consented to this arrangement in the Agreement. *See* A.R.S. § 28-2060 (Title: "Transfer of ownership by operation of law"). Indeed, Plaintiff has conceded that Defendant did not violate the statute. (Doc. 46 at 7) ("The statute is not one that the Defense broke[.]").

Instead, Plaintiff's argument appears to be that Defendant's "pattern of bad faith dealing" caused Plaintiff to violate the statute. (*Id.*) But Plaintiff has made no legal arguments in support of his claim that he is entitled to relief, under a statute that *he* violated, from a third party. *See generally* (doc. 46.) Thus, the Court finds that A.R.S. § 28-2060 is inapplicable and will grant summary judgment as to Plaintiff's claim under it.

### E.  Breach of Contract.

The Complaint alleges that Defendant breached the Agreement by delivering the vehicle in a damaged condition and failing to timely transfer title. *See* (Doc. 1-1 at 7.) Under Arizona law, a party alleging breach of contract "must show that an enforceable contract exists, that it was breached, and that the plaintiff suffered damages." *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 984–85 (D. Ariz. 2017) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)).

Defendant concedes that the Agreement is a valid and enforceable contract. (Doc.

47 at 2); *see Emmons v. Super. Ct. in & for Cnty. of Maricopa*, 968 P.2d 582, 585 (Ariz. App. 1998) ("Construction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles."); *see also Hisel v. Upchurch*, 797 F. Supp. 1509, 1518–19 (D. Ariz. 1992) ("An agreement to settle a legal dispute is a contract governed by the principles of contract law.").

But Defendant argues that "[t]he only obligation of [Defendant] under the Agreement related to the release of the vehicle was to coordinate its return . . . because the vehicle was not held by [Defendant], but by an independent auction house."[13] (Doc. 48 at 7.) From the plain language of the agreement, Defendant is correct. *See Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 518 (Ariz. 2008) ("When 'the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not . . . expand [the contract] beyond its plain and ordinary meaning or add something to the contract which the parties have not put there.'") (quoting *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis.*, 396 P.2d 20 (Ariz. 1964)). No provision of the Agreement requires Defendant to take any other action related to the vehicle's return or the transfer of title. *See generally* (Doc. 47-1). And Plaintiff does not dispute that Defendant fulfilled its sole obligation: both Parties agree that Plaintiff took possession of the vehicle on July 25, 2024. (Doc. 47 at 2); (doc. 52 at 3.) Indeed, Plaintiff has conceded that "the breach was not of the explicit language" of the agreement. (Doc. 46 at 3.)

Instead, Plaintiff argues in his Response that Defendant breached the implied covenant of good faith and fair dealing. (*Id.*) "The law implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565 (Ariz. 1986). This covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12 (Ariz.

---

[13] Plaintiff has not presented any evidence from which a reasonable factfinder could question the vehicle's location during the relevant period. *See, e.g.*, (doc. 52 at 61–62) (suggesting that Plaintiff's personal belongings, not his vehicle, were stored at a different location).

2002). "A party may breach the implied covenant even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement." *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277 (Ariz. App. 2007).

Here, Plaintiff has presented no evidence that Defendant did anything to deny Plaintiff the reasonably expected benefits of the Agreement. Defendant followed through on its promise to "coordinate the release" of the vehicle. (Doc. 47-1 at 2.) Nothing in the record suggests that Plaintiff reasonably expected that a promise to "coordinate" the vehicle's return implicitly contained a promise that the vehicle would be returned in a particular condition. Indeed, Plaintiff admits that the implied benefit of the Agreement was "repossession reversal." (Doc. 46 at 3.) And Plaintiff did, in fact, gain possession of the vehicle. (Doc. 47 at 2); (doc. 52 at 3.) Moreover, the carve-out in the contract allowing Plaintiff to sue for damage to the vehicle suggests that Plaintiff understood it was possible that the car, once delivered, could be damaged. *See* (doc. 47-1 at 2–3.)

In brief, Plaintiff has not presented evidence from which a reasonable factfinder could conclude that Defendant breached the Agreement. The Court will grant summary judgment as to Plaintiff's breach of contract claim.

### F. Misrepresentation.

The Complaint alleges that "[t]here was a misrepresentation of the vehicle condition." (Doc. 1-1 at 8.) Plaintiff asserts that "[o]n or about June 24, 2024, Defendant's counsel sent Plaintiff photographs of the vehicle" and that these photographs "showed the vehicle in a clean condition." (Doc. 52 at 2); *see* (doc. 46 at 6) (conceding that the photographs were sent by opposing counsel during settlement negotiations). Plaintiff alleges that the photographs were taken in November 2023 and were sent to hide the vehicle's true condition from Plaintiff. (Doc. 52 at 2.)

This Court has already noted that to the extent Plaintiff has stated any claim related to fraud[14] or misrepresentation, the claim fails because the alleged misrepresentation was

---

[14] To state a claim for fraud under Arizona law, a party must plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of

provided by Defendant's counsel during settlement negotiations. (Doc. 35 at 8 n.5); *see Linder v. Brown & Herrick*, 943 P.2d 758, 765 (Ariz. App. 1997) ("[A]s a matter of law and common sense, [Plaintiff] had no right to rely on statements made by the attorneys opposing [him]."). In his Response, Plaintiff disputes this finding, arguing that "Plaintiff did not rely on the Defendant's opinion during litigation [as in *Linder*] . . . but instead relied on the Defendant's statement of fact while the Defendant maintained exclusive control over the property." (Doc. 46 at 6.) But the *Linder* rule applies to settlement negotiations as well. *See Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1022–23, 1029 (Ariz. 2005) (applying the *Linder* rule that "[a] party to a lawsuit generally may not premise a fraud claim on alleged misrepresentations by adverse counsel" to statements made during settlement negotiations).

Furthermore, even if Defendant's counsel misrepresented the condition of the vehicle to induce Plaintiff to agree to a settlement, a separate lawsuit before this Court is not the appropriate remedy. *See Knight v. Elias*, No. 1 CA-CV 25-0618, 2026 WL 812049 (Ariz. App. Mar. 24, 2026) (noting that a litigant deceived by opposing counsel "had to pursue her remedies in the earlier litigation"); *see also Linder*, 943 P.2d at 406–07 (noting "other remedies" for a litigant deceived by opposing counsel, such as a Rule 60 motion for relief from final judgment); *Safeway*, 106 P.3d at 1030 (noting that a party may pursue sanctions or professional discipline against lawyers who make misrepresentations).

Since Plaintiff has presented no alternative basis for a fraud claim, the Court will grant summary judgment as to Plaintiff's allegations of misrepresentation.

**G. Negligence.**

The Complaint alleges that Defendant was negligent. (Doc. 1-1 at 6.) To prove negligence in Arizona, a plaintiff must show: "(1) a duty requiring the defendant to

___

its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury. *SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 691 (D. Ariz. 2022) (citing *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003)). The Complaint does not appear to allege each element. *See* (doc 1-1); (doc. 35 at 8).

conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).

The Court previously ordered Plaintiff to answer two questions related to this claim: "What duty did [Defendant] owe you under Arizona Law? And how did Defendant breach that duty?" (Doc. 40 at 10.) Plaintiff argues in his Response that Defendant breached a duty of reasonable care in the custody and preservation of the vehicle. (Doc. 46 at 4–5, 9.) Plaintiff cites A.R.S. § 47-9207, which states: "[A] secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession." A.R.S. § 47-9207(A).

But Plaintiff has not provided any evidence from which a reasonable factfinder could conclude that Defendant breached a duty of care, regardless of whether a duty existed. As an initial matter, Plaintiff has not provided sufficient evidence that there is a genuine dispute of material fact as to the condition of the vehicle. The purported damage to the vehicle is supported by two sets of photographs (one allegedly shown to Plaintiff during settlement negotiations, the other allegedly revealed during discovery) that appear to show the vehicle in essentially the same condition. *See* (doc. 52 at 22–34.) The latter photographs allegedly "show dirt, debris, or diminished appearance not reflected in the initial photographs." (*Id.* at 2.) Undoubtedly it is frustrating to recover one's car after a long period and find that it is covered in dirt and debris. However, a dirty car does not give rise to a cognizable legal claim. *See Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992) (confirming that the common law maxim *de minimis non curat lex*—"the law cares not for trifles"—is the default rule); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839–40 (9th Cir. 2007) (same).

Furthermore, Plaintiff's assertions regarding the vehicle's alleged mechanical damage are not supported by the record. Plaintiff has not provided any evidence to support his claim that the vehicle suffered more than $25,000 in mechanical damage. *See generally*

(doc. 52.) And absent evidence of the vehicle's condition prior to the repossession,[15] the documents purporting to show that the vehicle failed emissions testing and required repairs[16] do not establish that the alleged damage occurred during the relevant period. *See* (doc. 52 at 51–54). A reasonable factfinder thus cannot conclude that any damage, if present, was caused by Defendant.

Moreover, Plaintiff has not presented any evidence that Defendant physically possessed the vehicle at any point. *See* (doc. 51 at 2–3) (conceding that the evidence suggests a third party recovered the vehicle). Therefore, even if the vehicle was damaged by Swift or another party during the repossession, Plaintiff has not established that Defendant is legally responsible for this damage. *See Wiggs v. City of Phoenix*, 10 P.3d 625, 627 (Ariz. 2000) (noting the general rule that "an employer is not liable for the negligence of an independent contractor"); *Rand v. Porsche Fin. Servs.*, 167 P.3d 111, 118 (Ariz. App. 2007) (holding that an automobile repossession company is an independent contractor for purposes of vicarious liability). If Plaintiff's vehicle has truly suffered damage, the party that physically caused that damage is the appropriate party to sue. Here, Defendant is not that party.

Since Plaintiff has failed as a matter of law to establish that a duty has been breached, the Court will grant summary judgment as to Plaintiff's negligence claim.

## V.    CONCLUSION.

For the foregoing reasons, Plaintiff has failed to meet his burden of establishing a genuine dispute of material fact as to any of his claims. Therefore, Defendant's Motion for Summary Judgment is granted as to all claims in Plaintiff's Complaint.

//

//

//

---

[15] Given that the vehicle is 15 years old, it seems likely that some or all of the alleged damage was present before the repossession.

[16] The mechanic's initial work order cited by Plaintiff does not contain the mechanic's findings or an estimate for any needed repairs. It contains only a description of the issues reported by Plaintiff and an estimate—$120.98—for the initial inspection. *See* (doc. 52 at 53–54.)

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 48) is **GRANTED**.

Dated this 25th day of June, 2026.

Honorable John Z. Boyle
United States Magistrate Judge